IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 2:09-CR-033-J |
| | § | |
| ROY DAVID WILLIAMS | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Roy David Williams' ("Williams") *Motion to Dismiss and Alternatively for New Trial*, filed on June 4, 2009. This motion is DENIED.

### BACKGROUND

Williams was indicted on a 29-count indictment. Count 1 alleged violation of 18 U.S.C. § 1343 by wire fraud. Counts 2-12 alleged violation of 18 U.S.C. § 294 by transmitting to Pantex false and altered time cards. Counts 13-28 alleged violations of 18 U.S.C. § 287 by submitting false claims for per diem. Count 29 alleged violation of 18 U.S.C. § 641 by knowingly receiving and concealing stolen property of the United States with intent to convert the money to his own use. At the conclusion of a three-day trial, the jury returned a verdict of guilty on all 29 counts.

The charges stem from a series of contracts at the Babcock & Wilcox Pantex nuclear weapons facility ("Pantex") outside of Amarillo, Texas. The Pantex facility is run by a private contractor; however, it is funded by the United States Government. Williams owned and operated WAATTS, Inc. (WAATTS), which entered into contracts to provide technical services at Pantex regarding field risk analysis for nuclear weapons. At issue are three contracts known as releases. These contracts were numbered Release 0001, Release 0002, and Release 0003, and were entered pursuant to a Basic Ordering Agreement (BOA) that governed all three releases.

Williams' alleged criminal acts revolve around claims for payments that he was not entitled to under his contracts with Pantex. The evidence was mostly undisputed.

The Court reviews a posttrial motion for judgment of acquittal to determine "whether a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007). In reviewing the sufficiency of the evidence, this Court "views the evidence and the inferences drawn therefrom in the light most favorable to the verdict." *Id*. The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id*. Similarly, this Court must deny a motion for new trial "if a rational jury could have found the elements of the crimes beyond a reasonable doubt." *United States v. Giraldi*, 86 F.3d 1368 (5th Cir. 1996), citing *United States v. Dula,* 989 F.2d 772, 778 (5th Cir. 1993).

A rational jury could have found the facts as follows: Williams listed his business address in Lenoir City, Tennessee, for WAATTS; however, the business address actually was the residence of an acquaintance of Roy David Williams. Williams' business was actually located in downtown Amarillo, Texas. Similarly, he listed his personal mailing address in Oak Ridge, Tennessee, but he actually resided in the Amarillo area. Williams claimed and received a per diem to which he was not entitled. Williams listed false addresses for his employees, allowing them to collect a per diem as well. Williams deposited the payments to a bank account he maintained in Tennessee and then immediately had the funds transferred to a bank account in Amarillo, Texas, thus supporting the impression that his business was in Tennessee.

Additionally, Williams submitted invoices showing inflated hours for employees that were different from the employee's electronic records on which the employees were paid.

A disagreement developed between Williams and Pantex. Williams contended that Pantex owed him additional funds. Pantex contended that Williams had been overpaid. In the process of resolving those matters, Pantex required Williams to submit original time cards as part of the refute process. Williams then had his employees prepare written time cards. Those written cards reflected the hours which were shown on the employee's electronic records. Williams then altered the written cards before submitting them to Pantex to support the amounts that he had claimed in the invoices.

### THE CONTRACTS

Williams claims that the contracts in question (the releases) were fixed price contracts. He contends that he could not defraud the government regardless of the falsity of any of the documents which he submitted so long as the amount that he claimed in the progress claim was not for a percentage of the price for the release that exceeded the percentage of the work done on the release in question. His claim is without merit. The contracts in question were "target price" contracts.[1]

Pantex used a multi-step process to procure contracts. All contracts begin with a "Request for Proposal." Based on this "Request for Proposal," companies submit bids to complete a proposed contract. These bids usually contain resumes, labor rates and past experience to do work at the plant. After the bids are reviewed, Pantex issues a Basic Ordering Agreement ("BOA"). The BOA sets the terms and clauses applying to future contracts between the parties during its term. The releases constitute the individual contract for a specific task to be performed by the contractor. All releases are referenced back to the BOA to actually set the guidelines for the contract. The BOA

---

[1] Both the government and the defendant state that the contracts were not ambiguous.

which gave rise to the current dispute, numbered 57398, was signed by defendant Roy Williams and Ed Reed, a Pantex contract specialist. This BOA states in a bold and underlined larger font that "All references to 'Fixed Price' shall be changed to 'Target Price'…"

Consistent with this, Williams was required to submit invoices that reflected actual hours worked. Tifany Wyatt, the "authorization basis analyst" in charge of the Pantex contracts testified to the procedure under the target contracts as follows"

> Q. There's been some discussion about the nature of the contracts. What type of contracts were these?
>
> A. These were target-price contracts.
>
> Q. And what does that mean?
>
> A. Target-price contracts, we asked for -- when we would send a request for proposal for a certain release, we would ask for a target price.
>
> Q. Was the Defendant required to submit invoices reflecting the actual hours and per diem?
>
> A. Yes.
>
> Q. And is that how they were paid?
>
> A. Yes.

Release 0001 was completed early and at a lower cost than the target price in the release. WAATTS was paid based on his submitted actuals. He did not seek, and was not paid, the target price in Release 0001. The work under the other two Releases 0002 and 0003 was not completed because those contracts were terminated by the government before completion.

## THE *MERKLINGER* DECISION

On July 23, this Court *sua sponte* ordered both parties to brief the relevance of the case *United States v. Merklinger* to the present case. *United States v. Merklinger*, 16 F.3d 670, (6th Cir. 1994). In *United States v. Merklinger*, the Sixth Circuit Court of Appeals held that in order for a conviction to be sustained under 18 U.S.C. § 494, the false writing must be an actual forgery rather than false statements in a genuinely executed document. *Id.* at 672-73.

After a careful review of the issue, this Court has decided that the limited Fifth Circuit precedent does not dictate that the Fifth Circuit would follow *Merklinger*. The Fifth Circuit has previously accepted a conviction under § 494 for submitting a false writing without discussion, although the question of whether a false writing necessarily constituted a forgery was not raised. *United States v. Sublett*, 124 F.3d 693, 694 (5th Cir. 1997) (Defendant pled guilty to transmitting false writings because he "misrepresented his academic and professional qualifications in his bid to win a five year contract to provide counseling services to IRS employees.") In contrast, Williams does not cite any authority to suggest the Fifth Circuit would adopt the reasoning used by the Sixth Circuit in *Merklinger*. In any event, the case before the Court is distinguishable on its facts from the *Merklinger* decision. The Court in *Merklinger* stated:

> Section 494 criminalizes the acts of *false making, altering, forging,* or *counterfeiting* for the purpose of defrauding the United States. In the present case, no one accuses Defendant of altering, forging, or counterfeiting. Rather, in oral argument, the prosecutor suggested that Defendant's false statements to the government fall within the scope of the term "falsely makes," as used in § 494.

In the present case, Williams received time cards from his employees, altered them to be false, and then submitted the falsely altered time cards to Pantex in his effort to recover money which Williams claimed in the refute process.

Jason Smiley testified on his cross-examination:

Q. (By Mr. Wolfram) You have reviewed all of the invoices submitted by WAATTS, Incorporated to BWXT – BWXT Pantex, LLC involved in this lawsuit, have you not?

A. In this criminal investigation, yes.

Q. And you have talked to – at some length about some documents where some time cards were altered?

A. Correct.

Q. And you saw those?

A. Yes.

**X X X**

Q. Were those presented for payment?

A. Yes. They were an attempt to recoup the money which WAATTS – which WAATTS claims was owed to them from Pantex.

**X X X**

Q. Do you know that he asked for payment of those altered time sheets at that time?

A. Yes, I do.

Jason Smiley further testified:

Q. (By Mr. Wolfram) Now, they – do you have any document that was altered, that you claim was altered by Dr. Williams or Mr. Williams or Roy David Williams, the Defendant in this case, do you have any documents that you claim were altered by him that were presented to BWXT Pantex, LLC for payment, for payment of money to WAATTS, Incorporated?

A. No. Yes. I'm sorry, you're confusing me. I have documents that were submitted to Pantex that were altered by Roy Williams during the refute process.

Q. Were those presented for payment?

A. Yes. They were an attempt to recoup the money which WAATTS – which WAATTS claims was owed to them from Pantex.

Q. All right. There was a claim by WAATTS that WAATTS was owed some $61,000, and Pantex did not want to pay it. Is that the dispute you're talking about?

A. I believe so, yes.

Q. And then they went into some negotiations, asked him about some invoices he had and some documents he had.

A. Correct.

Q. And he presented those to explain what he had done in his invoicing process, didn't he?

A. He provided the falsified handwritten time sheets during that refute process.

> Q. Do you know that he asked for payment of those altered time sheets at that time?
>
> A. Yes, I do. And the reason I know is because he created a packet, which he submitted to Pantex, which we – the Government has put into evidence, that is that refute process stating, "You owe me this money and here's why." And those time cards are a part of that packet.

## SUBJECT MATTER JURISDICTION

Williams contends that the contracts in this case are not federal procurements and that he, therefore, cannot be found criminally liable under 18 U.S.C. § 494 (regarding false writings transmitted to any *officer of the United States*) or 18 U.S.C. § 287 (regarding false claims presented to any person or officer in the *service of the United States, or to any department or agency thereof*) (emphasis added). Williams contends that because Pantex is operated by Babcock & Wilcox Technical Services - a private contractor - he cannot be prosecuted for the criminal offense of presenting false claims to the United States.

This contention is not supported by either the testimony elicited at trial or the law. For a conviction under 18 U.S.C. § 287, the false claims need not be presented to the United States government directly. *United States v. Montoya*, 716 F.2d 1340, 1344 (10th Cir. 1983). Rather, the question is whether there is more than nominal federal involvement. *Id.* In *Montoya*, the defendant business contractor submitted false claims to the State of New Mexico in connection with a contract to "weatherize" homes. This program, although administered by the State of New Mexico, was funded by the United States Department of Energy. The Tenth Circuit Court of Appeals held that the defendant could be criminally liable for submitting false claims to the federal government, even

though the program was run by the state. The Court stated that "we believe that the source of the money-indisputably federal in this case-and the nature of the program are dispositive." *Id.*

The funds for Pantex came from the United States Department of Energy.

Tifany Wyatt testified as follows:

Q. (By Ms. Drake, Assistant United States Attorney) Now, when we talk about how much money he was making an hour or his employees, where is this money funded from?

A. The United States Government Department of Energy.

Q. And why don't you explain, explain that.

A. Well, we are B&W Pantex. Babcock and Wilcox was the company that we work for. They have a contract with the Department of Energy. We are the operating and management company, the O&M. And so we will do contracting with – with companies, but the funds always come from the Federal Government Department of Energy.

Q. The funds came from the United States Government?

A. Yes.

Further, the very nature of the activities taking place at Pantex is unique to the Federal Government. Pantex is a nuclear weapons facility. Facilities specializing in nuclear weaponry are predominately government operations, as opposed to operations typically organized and run by private enterprises. Both the source of the money and the nature of the program show that this case is correctly considered under the federal statutes.

## CONCLUSION

The Court has considered each of Defendant's contentions contained in his *Motion to Dismiss and Alternatively for New Trial* and concludes that they are without merit and should be DENIED.

IT IS SO ORDERED.

Signed this 28th day of August, 2009.

/s/ Mary Lou Robinson
MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE
